UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America for the Use and
Benefit of Diggermen Construction
Company, a Michigan Corporation,

           Plaintiff,

v.

CA Services, Inc., a Michigan Limited
Liability Company, and Travelers Casualty
and Surety Company of America, a
Connecticut Property and Casualty Insurer,

           Defendants.

And

CA Services, Inc., a Michigan Limited
Liability Company,

           Counter-Plaintiff,

v.

Diggermen Construction Company, a
Michigan Corporation,

           Counter-Defendant.

Case No. 13-11216

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [24 & 25]**

Currently before the Court are cross motions for summary judgment.

Plaintiff/Counter-Defendant Diggermen Construction Company ("Diggermen") moves for

summary judgment as to liability and to dismiss the counterclaim. Defendant/Counter-

Plaintiff C.A. Services, Inc. ("CAS"), moves for partial summary judgment on six discrete issues.[1] For the reasons set forth below, Diggermen's motion is DENIED and CAS's motion is GRANTED IN PART and DENIED IN PART.

## I.    Facts

Diggermen was a subcontractor on a construction site where CAS was the general contractor. The subject of the general contract was the construction of a new facility at the U.S. Department of Veterans Affairs Hospital in Ann Arbor. Diggermen was contracted to provide excavation, demolition, earth moving, and backfill services. Diggermen's work was originally anticipated to run from July 2011 through the end of October 2011. For numerous reasons the work was not complete by the target date and Diggermen had to work through the winter. For example, when Diggermen arrived on the work site, there was a large pile of debris in the middle of the area where Diggermen was supposed to work, and the removal of that pile delayed Diggermen from starting its duties promptly under the contract.

Diggermen was still working on the site on March 6, 2012, when it's owner Bruce Wyke received an email from CAS which contained the term "72 Hr Notice" in the subject line. The "72 Hour Notice" email lists multiple project details that Diggermen was allegedly responsible for and that were allegedly not in satisfactory compliance with Diggermen's obligations under the contract or acceptable industry safety standards. Diggermen contests that some of the unacceptable conditions existed, or if they did exist, it argues that they were outside its scope of work. Within the 72 hour window, Diggermen claimed via email that it remediated all of the issues. CAS responded that the conditions persisted. CAS

---

[1]CAS is also arguing on behalf of the surety, Co-Defendant Travelers Casualty and Surety Company.

directed Diggermen to continue working on the project while also insisting that it address the items listed in the 72 hour notice. By April 11, 2012 CAS determined that Diggermen was either unwilling or unable to address the items on the 72 hour notice and so it terminated the contract. *See* CAS's Resp., Ex. 2C.

The contract contains a "scope of work" section which lists the tasks Diggermen was obligated to perform. The scope of work section also contains a list of exclusions. The exclusions are strongly disputed by the parties. Specifically, one entry on the list of five exclusions reads "per Diggermen quote." The "Diggermen quote" is attached, and it contains a list of seventeen tasks excluded from its quote. Diggermen Mot., Ex. 1. Diggermen argues that the entry "per Diggermen quote" operated to incorporate the seventeen exclusions from its quote into the list of tasks excluded from the contract. CAS on the other hand, argues that "per Diggermen quote" operates to "exclude [the] exclusions" thereby including into the contract the tasks in the exclusions section of the "Diggermen quote." Boisvert Dep. 52:20-53:5, Dec. 10, 2013.

Diggermen claims that as winter approached it made numerous attempts to get CAS to commit to paying for increased "winter conditions" costs, and that CAS agreed to pay those costs. The record, however, shows several emails from CAS to Diggermen requesting a formal quote for the winter conditions costs with no response from Diggermen. CAS, via email, set a deadline for Diggermen to submit its winter conditions estimate and was clear that once the deadline expired CAS would not entertain any claims for winter conditions costs. The deadline passed and was extended, however, no estimate was submitted by Diggermen. CAS stated via email that as a result of Diggermen's failure to

submit a winter conditions estimate, CAS would not accept claims for those costs. *See* CAS

Reply Ex. A.

Beyond stating that the situation on the job site was constantly in flux as it relates

to submitting requests for increased costs and changes in work already done, Diggermen

gives no reasons why it did not respond to CAS's request for winter conditions costs.

Diggermen further alleges that CAS unreasonably and without explanation reduced

its applications for payment and withheld payment unreasonably.

CAS alleges that Diggermen provided substandard work and caused delays.

The contract at issue states, in pertinent part:

If the Subcontractor (a) fails to supply the labor, materials, equipment and supervision in sufficient time and quantity to meet the Contractor's progress schedule as it may be modified; (b) causes stoppage or delay of, or interference with, the Project; (c) fails to pay its subcontractors, laborers, suppliers, material men and/or employees for work on the Project promptly; (d) fails to pay workers' compensation or other employee benefits, withholding or any other taxes; (e) fails to comply with the safety provisions of this Agreement or with any safety order, regulation or requirement of any governing authority having jurisdiction over this Project; (f) makes unauthorized changes in supervisory personnel; (g) fails in the performance or observance of any of the provisions of this Agreement; or (h) shall file a voluntary petition in bankruptcy or be adjudicated insolvent; obtain an order for relief under Section 301 of the Bankruptcy Code; file any petition or fail to contest any petition filed seeking an reorganization or similar relief under any laws relating to bankruptcy, insolvency or other relief of debtors;' or seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of any of its assets or property; make an assignment for the benefit of creditors' or make an admission in writing of its inability to pay its debts as they become due, then Contractor after giving the Subcontractor written (or oral, confirmed in writing) notice of such default and seventy-two (72) hours within which to cure such default, shall have the right to exercise one or more of the following remedies:

i) Shall remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment

previously purchased for the purpose by Subcontractor) and deducting the cost thereof from any monies due, or to become due to, Subcontractor hereunder;

ii) Shall terminate this Agreement, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others takes possession of all materials, equipment, facilities, tools, scaffolds and appliances of Subcontractor relating to the SOW, for purposes of completing the SOW and securing to Contractor the payment of its costs and other damages under the Agreement and for the breach thereof; and

iii) Shall recover from Subcontractor all cost incurred by Contractor to complete the work plus a 10% mark-up for overhead and profit, and further recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fee suffered or incurred by Contractor by reason of, or as result of, Subcontractor's default.

Subcontractor further agrees that its breach of any other agreement, contract, or subcontract between the Contractor and Subcontractor pertaining to any other project or site shall be and constitutes a material breach of this Agreement. Subcontractor specifically agrees that, as material matter of inducement and consideration for the award of this Subcontract, in the event of such breach of any other agreement, contract, or subcontract, the Contractor shall be entitled to all its rights and remedies provided hereunder with respect to breach of this Agreement.

The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or now or hereafter at law or in equity.

The contract also contains a "pay when paid" provision that states: "Subcontractor agrees that no funds will be owed to the Subcontractor unless the Contractor is paid by the Owner. Subcontractor understands and agrees that payment to the Contractor from the owner is a condition precedent to the Contractor's obligation to pay the Subcontractor."

Also of note to this dispute is the contract's modification provision, which states:

Any Agreement modification will be sent to Subcontractor itemizing changes, with prices. Contractor's authorization to proceed shall require Subcontractor's counter signature. Subcontractor can make no modification to the specifications, or perform any work that deviates from the plans and specifications, without the written approval of Subcontractor. [sic] Any modification, deviation, or change that results in any additional cost to the

Contractor will not be accepted unless approved by Contractor, in writing, prior to the perfonnance of the work.

No additional compensation shall be allowed tor conditions Increasing costs, which were not known by Subcontractor when submitting its pricing, If the condition was obvious and could ·have been discovered by visiting the project and thaoughly informing itself of all existing conditions which would affect Subcontractor's work.

As CAS's general contract was with the VA, it was required to secure a payment bond, and it did so through Travelers Casualty and Surety Company of America.

Diggermen is seeking $658,000 plus attorney fees, claiming amounts due under the contract and additional costs. CAS, in its counter-complaint, seeks $438,000 in damages arising from costs to complete the project, costs to remedy and bring into compliance work done by Diggermen, and for services charged for but not rendered by Diggermen.

Discovery closed on January 3, 2014 and the parties timely filed their motions for summary judgment.

## II.   ANALYSIS

### A. The Standard on Motion for Summary Judgment

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if

6

the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*,  477 U.S. at 252.

### B. Diggermen's Motion for Summary Judgment and to Dismiss the Counter-Complaint is Denied

Diggermen's motion seeks summary judgment on three specific issues, and they are addressed in turn below.

As an initial matter, however, this case is before the Court under federal question jurisdiction by way of the Miller Act, and so where the Court must address matters directly relating to the contract, Michigan law controls, as the U.S. government is not a party to the case.  *U.S. Use of Kasler Electric Co. v. Ins. Co. of North Am.*, 1992 U.S. App. LEXIS 13286, *9 (6th Cir. 1992).

The Court also notes that the fate of Diggermen's claims will depend in part on whether or not certain tasks were indeed excluded from the contract, which, as a matter of the interpretation of an ambiguous contract provision - namely the exclusions section of the scope of work - is an issue of fact for a jury to determine.  *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008) (noting that "[w]hen a contract is ambiguous, it is for the jury to determine the meaning of its terms, subject to proper instructions and based upon evidence of the surrounding circumstances and the practical construction of the parties.").

**1. There is an issue of material fact with regard to the events leading up to CAS's termination of the contract**

Diggermen principally argues that CAS did not comply with the contract's 72 hour notice and cure provision in that it simply sent a termination notice on April 11, 2012 and that the March 6, 2012 email with the "72 Hour Notice" subject line did not constitute notice of material breach and intent to terminate.

The Court notes that the contract's notice and termination provision is clear. As Diggermen argues in its Reply brief, the structure of the termination section of the contract leads to a reading that requires 72 hours notice and an opportunity to cure before CAS can terminate the contract. Not only does the basic tenet of contract construction requiring that a contract be read to give effect to every section lead to this conclusion, but a plain reading of the contract does as well.

The notice requirement is laid out as a prerequisite to CAS's ability to invoke the remedy of termination. Specifically, the contract states that after giving 72 hours notice and an opportunity to cure, CAS "shall have the right to exercise one or more of the following remedies" and then goes on to specifically list termination as a remedy available after the notice period. The paragraph that reserves to CAS the right to exercise "every other remedy given hereunder or now or hereafter at law or in equity" may or may not be tied to the 72 hour notice provision, the Court need not make that determination at this point, because it is clear that the specific remedy of termination is tied to the notice and cure provision. The catchall clause at the end of the section appears designed to allow CAS to sue the subcontractor for more minor breaches of the contract without having to hew to the 72 hour notice and cure requirement. Regardless of its intended effect, reading the catchall

8

clause to include termination would render the specific reference to termination in the preceding paragraph a nullity, and is therefore not a permissible reading of the contract.

That being said, Plaintiff's motion on this point still fails. It is uncontested that CAS sent a 72 hour notice via email on March 6, 2012. It is an issue of fact whether or not that notice was sufficient to satisfy the notice and cure requirement of the contract because while there is no other 72 hour notice provision in the contract, the notice itself did not specifically reference the notice and cure provision of the contract, nor did it explicitly state that failure to comply would result in termination.

Diggermen also argues that even if the March 6 email is considered a 72 hour notice under the contract, the fact that CAS's termination notice came a month later requires a finding that CAS waived its right to terminate. The undisputed facts, however, do not support Diggermen's position. In the ongoing email conversation between the parties from the time of the 72 hour notice to the termination, CAS consistently pressed Diggermen to both attend to the outstanding items on the 72 hour notice and to continue making progress on its responsibilities under the contract. Diggermen does not point to any case law that suggests that simply because CAS waited longer than 72 hours to terminate it waived its right to do so. CAS waited one month to terminate the contract after the 72 hour notice, and one month is not *per se* an unreasonable amount time under these circumstances, especially in light of the fact that during that month CAS kept the pressure on Diggermen to comply with the notice.

The Court, therefore, DENIES Diggermen's motion for summary judgment on this issue of CAS's liability.

9

### 2. Diggermen's motion to dismiss CAS's counterclaims is denied

Diggermen moves the Court to dismiss CAS's counterclaims arguing that CAS breached the contract and claiming that as such CAS cannot maintain a claim for breach of contract. While it is true that "he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform," *Chrysler Int'l Corp. v. Cherokee Export Co.*, 134 F.3d 738, 742 (6th Cir.1998) (quoting *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311 (Mich. 1949)), the Court is not at this time making a finding that CAS committed a breach, let alone the first substantial breach, and seeing as the Court is denying Diggermen's motion on the issue CAS's liability, the Court cannot dismiss the counterclaims on this basis.

The Court, therefore, DENIES Diggermen's motion to dismiss the counterclaims.

### 3. The Surety's liability is co-extensive with CAS's however as the Court has not made a determination regarding sums justly due under the contract a determination of liability for the Surety at this time is premature

Diggermen argues for summary judgment against the surety as well. It is true "that a surety's liability corresponds exactly with that of its principal" and that where "the principal can be held liable for breach of a construction contract, so may the surety." *Hunters Pointe Partners Ltd. P'ship v. U.S. Fid. & Guar. Co.*, 486 N.W.2d 136, 138 (Mich. App. 1992)(citing *Ackron Contracting Co. v. Oakland Co.*, 310 N.W.2d 874 (Mich. App. 1981)).

Beyond finding that the surety's liability will be co-extensive with CAS's, the Court must DENY Diggermen's motion on this point as well. As is further discussed in Section C.4.a., below, a surety's liability in a Miller Act case is coextensive with that of the contractor within the constraints of the Act. That is, a surety may not rely on procedural

10

delay tactics to avoid paying "sums justly due under the contract." Inherent in that rule, however is the requirement that sums be "justly due." Here, Diggermen's motion is premised on CAS's liability, and given the fact that the Court is not granting Diggermen's motion as to CAS's liability, no such finding of surety liability is appropriate on that basis.

As to the "sums justly due" approach to surety liability, Diggermen's motion does not establish the absence of an issue of material fact with regard to how much it is owed under the contract, and surety liability is therefore not an issue appropriate for summary judgment.

Plaintiff's motion for summary judgment is therefore DENIED in its entirety.

### C. CAS's Motion for Partial Summary Judgment is Granted in Part and Denied in Part

CAS's motion seeks summary judgment on four discrete issues, which are addressed below.

### 1. Diggermen's Count II claim for $58,647.13 in additional costs

It is not contested that the $58,647.13 claim in Count II is for an increase in fuel and material costs that occurred after Diggermen entered its bid on the project. CAS relies on the "pay-when-paid" provision of the contract. Specifically, CAS argues that the $58,647.13 claim should be dismissed because that claim, or at least $47,644.29 of it, is currently pending with the VA and as such, if and when CAS receives payment from the VA, it will duly make the payment to Diggermen. CAS notes that the contract specifically identifies the pay-when-paid provision as a condition precedent to Diggermen's receipt of payment. In fact, the contract states: "Subcontractor understands and agrees that payment to the

11

Contractor from the owner is a condition precedent to the Contractor's obligation to pay the Subcontractor."

Diggermen argues that the pay-when-paid provision is an affirmative defense and has not been adequately pleaded to be invoked. Diggermen also argues that inherent in a pay-when-paid provision is a requirement that the general contractor place no obstacles in the way of securing payment.

Given that the contract plainly identifies the pay-when-paid provision as a condition precedent, Diggermen's arguments regarding the pleading of affirmative defenses is not germane to this issue. *Berkel & Co. Contractors v. Christman Co.*, 533 N.W.2d 838, 839 (Mich. App. 1995) (finding a pay-when-pay provision identified as a condition precedent to be a condition precedent). That is, the occurrence of a condition precedent is part of a plaintiff's *prima facie* case because a condition precedent, by definition, must occur prior to the creation of liability in a party.

Having determined that CAS may rely on the pay-when-paid provision for the $58,647.13 claim, the Court must consider Diggermen's obstruction argument.

CAS has admitted that the claim has been pending with the VA for over two years and that it is still "waiting [for] negotiation or...trying to figure out when [it is] going to negotiate" the claim. Beyond stating that it has not exhausted the negotiation process, CAS has not given a reason for the long delay. The Court finds that a genuine issue of material fact exists as to whether or not CAS's approach to resolving this claim is somehow dilatory to the extent that it is creating an obstacle to the occurrence of the condition precedent of payment by the VA . The Court must therefore DENY CAS's motion for summary judgment with regard to the $58,647.13 claim against it.

12

**2. Diggermen's claims in Count III for $194,880.00 for additional equipment rentals and $134,400.00 for additional general conditions**

CAS next argues for the dismissal of Diggermen's Count III claims for additional equipment rentals and additional general conditions. In its response, Diggermen brings up the issue of winter conditions costs and does not squarely address the issue of additional general conditions. CAS argues that winter conditions costs and additional general conditions costs are distinct from one another, and that its motion only addresses Diggermen's claim for "additional general conditions" not winter conditions. As such, it appears that the parties are talking at cross purposes with regard to the extended conditions versus winter conditions issue.

**a. Winter conditions**

Regardless of whether or not winter conditions and additional general conditions can be construed to cover the same costs, the evidence before the Court establishes that Diggermen waived its right to be compensated for increased costs due to winter conditions.

The winter conditions issue plays out over several email communications between CAS and Diggermen from November 11, 2011 through January 26, 2012. Over the course of the email correspondence, CAS requests a quote for increased costs due to winter conditions, Diggermen submits a quote, CAS identifies some issues with the quote and requests a revised quote. Diggermen does not provide CAS with a revised quote, despite being given extensions on the deadline to submit a revised quote and several warnings by CAS that without the revised quote Diggermen's winter conditions claims would not be honored. Diggermen's contentions that it was promised it would be paid for winter conditions is contrary to the evidence before the Court.

13

Furthermore, Diggermen's original winter conditions quote states that "extended general conditions" are not included in the quote. This leads the Court to the conclusion that winter conditions and general conditions are indeed distinct categories of costs and that both parties recognize this distinction.

### b. Additional general conditions

The evidence submitted by both sides shows instances of CAS both pointing out to Diggermen problems with either Diggermen's work or its submission of paperwork and also directing Diggermen to continue working and to do various specific tasks, some of which Diggermen argues were outside the scope of the contract. Additionally, there is no dispute that the project as a whole, including Diggermen's work, was delayed by various factors. Diggermen's claim for additional general conditions stems from both the longer than anticipated time frame of the project and the tasks CAS directed it to do that it claims were not its responsibility. In so far as Diggermen separates its equipment rental claims from the rest of its additional general claims, the Court will address the two sets of claims separately.

### i. Additional equipment rental

CAS argues that the claim for $194,880.00 in additional equipment rental fees should be barred because Diggermen was required to submit sworn statements regarding its costs, and that while the equipment rental was listed on the statements, it was listed with no outstanding dollar amount due. Diggermen explains this by referring to the contract it had for equipment rental, which did not require payment to be due on the rentals until Diggermen was done with the equipment.

It appears to the Court to be an issue of fact whether or not Diggermen's inclusion of the equipment rental without a corresponding amount owed on its sworn statements was

14

sufficient to put CAS on notice that Diggermen would have a claim for equipment rented over the course of the project and that that claim would only increase as the project wore on, due to the nature of the rental business. That being said, CAS could only be on notice for reasonable rental fees, at or near the going market rate for such equipment rental.

The Court, therefore, DENIES CAS's motion with regard to the equipment rental fees.

### ii. Non-equipment rental additional general conditions

CAS also seeks to have Diggermen's claim for $134,400.00 for additional general conditions dismissed. While the evidence does suggest that Diggermen did not comply with the contract's requirements for submitting modifications and increased requests for payment, it also suggests that CAS regularly directed Diggermen to remain on the site and to do specific tasks, often resulting in an objection from Diggermen. CAS repeatedly told Diggermen to keep track of its time on various assignments and to submit "change orders" so that CAS could move forward with attempting to secure additional payment.

Whether or not Diggermen complied with CAS's directions, it is uncontested that Diggermen was at the project site doing work directed by CAS into April 2012. To the extent that CAS is seeking summary judgment on all of Diggermen's claims for any alleged additional work and the time beyond October 31, 2011 that Diggermen was on the job site, the Court finds multiple issues of fact preclude such a ruling. What amount, if any, of the $134,400.00 Diggermen may actually be entitled to is an issue of fact that rests on whether or not the course of performance on the job site between Diggermen and CAS operated to create a waiver or modification of the contract, particularly with regard to CAS's continued direction of Diggermen's work and, as noted above, what was and was not

15

excluded from the scope of work. That determination is factual in nature, and the Court, therefore must DENY CAS's motion for summary judgment on this issue.

### 3. Diggermen's Count IV claim for Quantum Meruit recovery

CAS moves for summary judgment on Diggermen's *quantum meruit* claim, arguing that a such a claim is barred where there is an express contract covering the same subject matter between the same parties, as there is here. In response, Diggermen argues that it was directed to perform work that was outside the scope of the contract, and therefore no express contract covers the work.

It is true that in Michigan, "[g]enerally, an implied contract may not be found if there is an express contract between the same parties on the same subject matter." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. App. 2006) (quoting 42 CJS, Implied and Constructive Contracts, § 34, p. 33). Here, there is an express contract between the parties covering the same subject matter. Whether or not certain items were "excluded" from the contract, those items were necessarily contemplated by the parties, even if just to exclude them. Those items, therefore, are a part of the contract and any claims relating to those items must be analyzed under the contract and any modifications thereto that the parties' actions may or may not have effected. In other words, the "subject matter" of the contract in this case is Diggermen's work on the VA project. Everything that Diggermen did or did not do on the VA project site can be addressed by the contract. If, for example, CAS directed Diggermen to go to another project site and perform work, that work would be considered relating to different subject matter than that covered by the contract between the parties. That is not the case here.

16

As such, Diggermen's *quantum meruit* claim fails as a matter of law, and the Court GRANTS CAS's motion for summary judgment on this issue.

### 4. Count V's Miller Act claim

#### a. Miller Act claim generally

CAS's motion makes reference to an argument that Diggermen cannot recover against the surety if it cannot succeed on its claims against CAS. CAS never develops this argument, instead focusing on the standing issue addressed below. Diggermen addresses this argument on the narrow issue of the pay-when-paid provision. As the Sixth Circuit does not appear to have addressed this specific issue, the raft of multi-circuit case law that Diggermen provides is persuasive on this point. In light of the highly remedial nature of the Miller Act, it stands to reason that, as the Ninth Circuit said, "the liability of a surety is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act."

That being said, a Miller Act plaintiff must still demonstrate liability. As the Act provides for the recovery of the "sums justly due" under the contract, an inquiry into what is justly due must be undertaken, which would necessarily require an examination of the contract's terms and the parties' actions. Simply pointing to the Miller Act's remedial function and setting forth a claim will not suffice; the Miller Act may be remedial, but it is not a vending machine for such claims.

The Court concludes, therefore, that where Diggermen successfully demonstrates a sum justly due under the contract through the lens of the Miller Act, it may recover from the surety. However, if Diggermen cannot recover from CAS because the sums it is

17

seeking to recover are not, in fact, justly due, then no recovery from the surety may be had either.

### b.  Miller Act claim by way of the equipment rental

CAS does develop its argument that Diggermen does not have standing under the Miller Act to bring its claim for equipment rental fees because the Miller Act's "specific" claimant category takes precedence over its more "general" claimant category. CAS's reading of the Miller Act is in error.

The Miller Act, in pertinent part, states:

(1) In general.--Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

(2) Person having direct contractual relationship with a subcontractor.--A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b) (West 2014).

While CAS correctly states a canon of statutory construction regarding specific versus general categories in a statute, that tool for deciphering a statutory provision only becomes relevant where a plain reading of the statute leaves a Court wanting for meaning. *United States v. Loehr*, 966 F.2d 201, 204 holding modified by United States v. Gessa, 971

F.2d 1257 (6th Cir. 1992) (noting that "[t]he rule of statutory construction begins with the plain meaning of the words in the statute.").

Here, the general and specific grants of standing are not in conflict with one another. Subcontractor's claims are clearly included in the language "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title." 40 U.S.C. § 3133(b)(1). The general provision of § 3133(b)(1) could in theory, be read to include very remote suppliers of suppliers of suppliers, and so on. The more specific language of § 3133(b)(2) therefore, is necessary to circumscribe the ability of remote potential claimants to sue under the Act. By drawing a line at the sub-subcontractor level, the statue creates a list, which must be read to exclude those not included.

The case that CAS relies on for its position on this issue actually works against it. In construing an older version of the language in the Miller Act, the Supreme Court noted that the section:

> makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-contractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act.5

*Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107-08 (1944). The *Clifford* court expressly included subcontractors in its reading of the act. Furthermore, the *Clifford* court's use of the inclusive "and" as opposed to the exclusive "or"

when relating the sections of the contract further supports a reading of the statute that allows Diggermen's claim.

CAS's reading, furthermore, would impermissibly render § 3133(b)(1) a nullity in favor of § 3133(b)(2) because under its reading a subcontractor would not be able to sue to recover for its costs where those costs are comprised of bills due to third parties. That Diggermen's claim has been designated for its equipment rental obligation does not take away from the fact that it is Diggermen's claim. The very nature of the construction business is that many claims are necessitated by a subcontractor's costs, and those costs often come in the form of fees for services and material, including equipment. Would there be any practical difference if instead of equipment rental fees, Diggermen was seeking to recover equipment repair fees? The Court thinks not so long as the claim is properly submitted and covered by the contract, but CAS's reading of the statute would allow an action to recover those fees only to be brought by the mechanic that performed the repairs, even though they rightly form a part of the subcontractor's bill for services. Given the Supreme Court's express inclusion of subcontractors in its reading of the Miller Act's standing provision, the Court finds that Diggermen has standing under the Miller Act to pursue its claims for equipment rentals.

CAS's motion for summary judgment as to Diggermen's standing under the Miller Act on its claim for funds Diggermen has allocated to pay for its equipment rental is hereby DENIED.

## III.   CONCLUSION

The Court, therefore, DENIES Diggermen's motion in its entirety. Furthermore, the Court GRANTS CAS's motion with respect to Diggermen's claim for *quantum meruit*

20

recovery in Count V and hereby dismisses Count V and all claims found therein. Finally,

the Court DENIES the rest of CAS's motion.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record
on April 30, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager